UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC d/b/a ANNIEMAC HOME MORTGAGE, | : : : : |
| Plaintiff, | : 1:19-3666 (NLH)(JS) : |
| v. | : OPINION : |
| Joshua Lund et al. | : : |
| Defendants. | : : |

APPEARANCES:

Zachary Glaser, Esquire
John J. Allegretto, Esquire
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA 19103
American Neighborhood Mortgage Acceptance Company LLC, d/b/a
AnnieMac Home Mortgage
    *Attorneys for Plaintiff*

Peter G. Goodman
Law Office of Peter G. Goodman, PLLC
30 Broad St
37th Floor
New York, NY 10004
    *Attorney for Defendant Joshua Lund*

Matthew Benson
13 4th Avenue N
#102
Minneapolis, MN 55401
    *Defendant Pro Se*

James Schaefer
5110 Trenton Lane N.
Plymouth, MN 55442
    *Defendant Pro Se*

Mark Trudeau
6434 City West Parkway
Eden Prairie, MN 55344
    *Defendant Pro Se*

Jonathan D. Ash, Esquire
Alison L. Hollows, Esquire
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
    *Attorneys for Defendant Gold Star Mortgage Financial
Corporation*


**HILLMAN**, District Judge

     Plaintiff American Neighborhood Mortgage Acceptance Company
LLC d/b/a/ AnnieMac Home Mortgage has brought this action
against its former employees and its competitor.  Presently
before the Court is the motion of Defendant Gold Star Mortgage
Financial Corporation to dismiss for lack of personal
jurisdiction and improper venue.  Defendant Joshua Lund has also
brought a motion to dismiss and compel arbitration that is
presently before the Court.  For the reasons stated below, both
of these motions will be denied.

## Background

     American Neighborhood Mortgage Acceptance Company LLC
d/b/a/ AnnieMac Home Mortgage ("AnnieMac") is a national
residential mortgage company.  AnnieMac is a New Jersey
corporation with its principal place of business in Laurel, New

Jersey.  AnnieMac is an approved seller and servicer with Fannie Mae, Freddie Mac, and Ginnie Mac.  According to AnnieMac, it prides itself on its customer services and access to mortgage programs for conventional, government, and non-conforming mortgages.

AnnieMac operates branches nationwide, including Minneapolis, Minnesota.  On December 29, 2017, AnnieMac hired Joshua Lund as its branch manager for its Minneapolis office.  Shortly after hiring Lund, AnnieMac hired Matthew Benson, James Schaefer, and Mark Trudeau as Mortgage Loan Originators in its Minneapolis branch.  Collectively, Lund, Benson, Schaefer, and Trudeau are referred to as the "employee defendants."  Each of the employee defendants signed an employment agreement containing different terms and conditions on both their employment and their post-employment activity.

These agreements identify AnnieMac as a New Jersey company.  AnnieMac also contends that it required each of the employee defendants to travel to New Jersey during their employment for training or other company events.  The employment agreements further state that client information is confidential and proprietary and can only be disclosed with express permission from AnnieMac.  AnnieMac employees are also forbidden from copying or removing client information under the terms of this employment agreement.

On February 22, 2018, AnnieMac issued Lund a Revised Offer Letter changing his compensation.  Through this letter, Lund became eligible to receive retention bonuses totaling $153,000 for remaining employed with AnnieMac through June 25, 2018. According to this letter, if Lund were to be terminated from his employment, either voluntarily or for cause, in the  months after receiving his retention bonus, he would reimburse AnnieMac.  AnnieMac paid Lund the full amount of the retention bonus outlined in his Revised Offer Letter.

Lund's employment agreement contains both a forum selection clause and an arbitration clause.  The arbitration clause found in Article VI provides in part that the parties:

> agree to submit to final and binding arbitration for any and all disputes, claims (whether in tort, contract, statutory or otherwise); and disagreements concerning (1) the interpretation or application of this Agreement, (2) Employee's employment by Employer, or (3) the termination of this Agreement and the termination of Employee's employment by Employer, including ability to arbitrate any such controversy or claim.

ECF No. 21-1, at 6.

The forum selection clause in Article VII reads:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey and Federal Law.  In the event of any litigation, the parties hereto irrevocably consent to the exclusive jurisdiction of the state courts in Burlington County and/or the U.S. District Court for the District of New Jersey in Camden New Jersey.

Id. at 7.

On September 22, 2018, Lund informed AnnieMac that he would resign from his position at AnnieMac and begin working at Gold Star Mortgage Financial Corporation ("Gold Star") effective September 28, 2018.  Gold Star is a Michigan corporation with its principal place of business in Ann Arbor, Michigan.  Gold Star is a residential mortgage lender that operates nationwide, including in New Jersey.  Gold Star and AnnieMac compete against one another in the mortgage servicing industry.

According to AnnieMac, once Lund decided to move to Gold Star, he recruited Defendants Benson, Trudeau, and Schaefer to join him in changing companies.  AnnieMac alleges that as part of this transition, the employee defendants made several attempts to contact AnnieMac clients about switching to Gold Star.  AnnieMac further alleges that Gold Star expected that the employee defendants would bring AnnieMac's confidential materials and clients with them when they became Gold Star employees.

Lund sent a customer list from his AnnieMac email account to his personal email account on September 4, 2018.  Throughout the month of September, Lund contacted several AnnieMac clients, supplying them with his personal email address and informing them of his transition to Gold Star.  AnnieMac also alleges that Lund held an ownership interest in a real estate company called

5

"Lund Realty, Inc." with his wife, Danielle Lund, in violation of his employment agreement.

In September 2018, Defendants Benson, Trudeau, and Schaefer resigned their positions at AnnieMac and accepted similar positions with Gold Star.  AnnieMac alleges that like Lund, Benson, Trudeau, and Schaefer sent confidential information from their AnnieMac email accounts to their personal email accounts with intentions of utilizing this information during their employment at Gold Star.  AnnieMac further alleges that Benson, Trudeau, and Schaefer contacted several AnnieMac clients to supply them with updated contact information and solicit business for Gold Star in September 2018.  According to AnnieMac, Benson, Trudeau and Schaefer started their new positions at Gold Star around October 1, 2018.

AnnieMac filed its Complaint against Lund on January 31, 2019, ECF No. 1, and its First Amended Complaint the next day on February 1, 2019.  ECF. No. 6.  Defendant Lund filed an answer to this complaint on March 27, 2019. ECF No. 11.  His answer asserted four counterclaims, asserted an independent basis for jurisdiction over those claims, proper venue in the District of New Jersey and demanded a trial by jury. Id.  After moving for leave to do so, Plaintiff filed its Second Amended Complaint ("SAC") on June 10, 2019, adding Gold Star, Benson, Trudeau, and Schaefer as defendants.  ECF No. 21.

6

Plaintiff's complaint contains nine counts: (1) breach of contract (against Lund); (2) unjust enrichment (against Lund); (3) breach of contract (all employee defendants); (4) misappropriation of trade secrets in violation of the Minnesota Uniform Trade Secrets Act (against Benson, Trudeau, and Schaefer); (5) misappropriation of trade secrets in violation of the New Jersey Trade Secrets Act (against Lund); (6) violation of the Defend Trade Secrets Act (against all Defendants); (7) violation of the Computer Fraud and Abuse Act (against all Defendants); (8) common law breach of fiduciary duty (against employee defendants); (9) common law civil conspiracy (against all Defendants).

Defendant Lund moved to dismiss this complaint and compel arbitration on July 3, 2019. Defendant Gold Star moved to dismiss this complaint for lack of personal jurisdiction and improper venue on July 12, 2019. These motions have been fully briefed and are ripe for adjudication.

## Discussion

A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted claims under the Defend Trade Secrets Act (18 U.S.C. § 1836) and the Computer Fraud and Abuse Act (18 U.S.C. § 1030). The Court has

supplemental jurisdiction over Plaintiff's state law claims
pursuant to 28 U.S.C. § 1367(a).

B. Standard for Motion to Dismiss pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for
dismissal of an action in cases where the Court does not have
personal jurisdiction over the defendant.  "Once challenged, the
plaintiff bears the burden of establishing personal
jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d
312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270
F.3d 144, 150 (3d Cir. 2001)).  In deciding this motion, the
Court will "accept all of the plaintiff's allegations as true
and construe disputed facts in favor of the plaintiff." Cateret
Sav. Bank v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir. 1992),
cert. denied 506 U.S. 817 (1992) (citations omitted).

"A federal court sitting in New Jersey has jurisdiction
over parties to the extent provided under New Jersey state law."
Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir.
2004) (citations omitted).  According to New Jersey's long-arm
statute, New Jersey "permits the exercise of personal
jurisdiction to the fullest limits of due process." IMO Indus.,
Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing
DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d
Cir. 1981)).  For the purposes of personal jurisdiction, the Due
Process Clause depends upon "the relationship among the

8

defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

A defendant establishes minimum contacts with the forum state by "'purposely avail[ing] itself of the privilege of conducting activities within the forum State'" thereby invoking "'the benefits and protections of [the forum State's] laws.'" Asahi Metal Indus. Co. Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The reason for requiring "purposeful availment" is to assure that the defendant could reasonably anticipate being haled into court in the forum state, not as a result of "random," "fortuitous," or "attenuated" contacts with the forum state. See Burger King Corp., 471 U.S. at 475; see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction can be either general or specific. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). Courts have general jurisdiction when a defendant's contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum state." See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 925 (2011) (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)). For corporations, the main bases for general jurisdiction are place of incorporation and

principal place of business.  See Display Works, LLC v. Bartley, 182 F.Supp.3d 166, 173 (D.N.J. 2016) (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)).

Alternatively, courts have specific jurisdiction when the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.  See Helicopteros, 466 U.S. at 414 n. 8.  To exercise specific jurisdiction, a plaintiff must satisfy two prongs:  a plaintiff must show that the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

It must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining an efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  Burger King Corp., 471 U.S. at 476 (quoting World-Wide Volkswagen, 444 U.S. at 292).

10

Plaintiffs may also establish specific jurisdiction in cases of intentional torts by satisfying the requirements of the Calder v. Jones test.  465 U.S. 783 (1984).  The Third Circuit held that:

> Calder allows a plaintiff to demonstrate personal jurisdiction if he or she shows:
>
> (1)  The defendant committed an intentional tort;
>
> (2)  The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3)  The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten v. Goodwin, 499 F.3d 290, 297 (3d Cir. 2007) (citing IMO Indus., 155 F.3d at 265-66).

The Third Circuit further held that "[g]enerally speaking, under Calder an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts'" prong of the Due Process test is satisfied."  IMO Indus., 155 F.3d at 260 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984)).

C. Personal Jurisdiction Analysis

In this case, Gold Star asserts that this Court lacks both general and specific jurisdiction over Gold Star and that

11

therefore, this complaint should be dismissed.  In contrast, AnnieMac maintains that this Court has both general and specific jurisdiction over Gold Star.  The Court finds that it has specific jurisdiction over Gold Star and will not dismiss AnnieMac's complaint for lack of personal jurisdiction.

The Court agrees with Gold Star that it has not conducted continuous and systematic business within the state of New Jersey sufficient to give rise to general personal jurisdiction. As Gold Star points out, the main bases of general jurisdiction are not present in this case as Gold Star is neither incorporated in New Jersey, nor is New Jersey its principal place of business.  Gold Star alleges that though it is registered to do business in New Jersey, it has not maintained an office in New Jersey in years.  Gold Star further alleges that less than 0.5% of the loans it originated since 2010 have been in New Jersey.  Gold Star argues that its one employee who resides in New Jersey actually conducts business in Tennessee.

AnnieMac counters that Gold Star is registered to do business in New Jersey and indicates on its website that it operates in New Jersey as a national mortgage servicer. According to AnnieMac, Gold Star is required to annually file reports with the New Jersey Commission of Banking and Insurance and maintain certain records for inspection.

The Court finds that it has specific jurisdiction over Gold Star.  In support of its argument that this Court has specific jurisdiction over Gold Star, AnnieMac compares the current case to Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc., 2019 U.S. Dist. LEXIS 79319 (D.N.J. May 10, 2019).  In Strategic Prods., one software technology company brought a complaint against a competitor software technology company after several of its employees left for the competitor company in violation of their employment contracts.  Id. at *3.  In that case, a judge of this Court held that it had personal jurisdiction over the defendant software company because they had "expressly aimed its conduct at New Jersey, such that New Jersey can be said to be the focal point of [defendant]'s alleged tortious activity." Id. at *21.

The Court notes several distinctions between Strategic Prods. and the current case.[1]  Nonetheless, taking AnnieMac's

---

[1] In Strategic Prods., this Court noted that "the employees who . . . migrated to [defendant] were assets fully tied to New Jersey by the indices of their employment," before ultimately concluding that "[b]y targeting them, [defendant] targeted New Jersey assets."  This Court further noted that "simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient" to demonstrate that the defendant expressly aimed its conduct at the forum.  Id. at *16 (citing IMO Indus., 155 F.3d at 265).  In this case, the employee defendants were located in Minnesota, not New Jersey.  AnnieMac explains that the employee defendants signed agreements identifying AnnieMac as a New Jersey company.  Furthermore, AnnieMac required these employees to travel to New Jersey for training and other company events.

allegations as true, the Court finds AnnieMac asserts a plausible claim that Gold Star committed an intentional tort; AnnieMac felt the brunt of the harm in New Jersey; and Gold Star expressly aimed its tortious conduct at New Jersey.

Gold Star knew or expected that the employee defendants would target AnnieMac customers and potential customers once they began working at Gold Star.  AnnieMac further alleges that Gold Star knew or expected that the employee defendants would bring with them and disclose confidential materials from AnnieMac when they changed positions.  AnnieMac alleges that Benson, Trudeau, and Schaefer entered into an agreement to divert AnnieMac customers to Gold Star prior to their resignation from AnnieMac.  Gold Star was allegedly aware of and supported this pact between the employee defendants. These facts when taken together enhance Gold Star's otherwise insufficient contacts with the New Jersey such that the 'minimum contacts'" prong of the Due Process test is satisfied.

D. Standard for Motion to Dismiss pursuant to Rule 12(b)(3)

Federal Rule of Procedure 12(b)(3) provides for a motion to dismiss for improper venue.  Fed. R. Civ. P. 12(b)(3).  Statute 28 U.S.C. § 1391 defines venue and sets forth where venue may be properly laid.  Under 28 U.S.C. § 1391(b), a civil action may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a

judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).  It is not uncommon that a plaintiff may file his or her action in more than one venue.  Nat'l Micgrographics Sys., Inc. v. Canon U.S.A. Inc., 825 F.Supp. 671, 679 (D.N.J. 1993).

A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper.  See Great W. Mining & Mineral Co. v. ADR Options, Inc., 434 F. App'x 83, 86 (3d Cir. 2011).  Forum selection clauses are presumptively valid unless a defendant can show that the clause was included as a result of fraud or overreaching, that enforcement would violate a strong public policy or "enforcement would result in litigation in a jurisdiction so seriously inconvenient to a [Defendant] as to be unreasonable."  Gen. Eng'g Corp. v. Martin Marietta Alumnina Inc., 738 F.2d 352, 356-57 (3d Cir. 1986); see also Reynolds Publrs v. Graphics Fin. Grp., 938 F.Supp. 256, 263 (D.N.J. 1996).

A Court in this District has previously held that "where a third party's conduct is 'closely related to the contractual

relationship,' the forum selection clause applies to the third party." Affiliated Mortg. Protection, LLC v. Tareen, 2007 WL 203947, *3 (D.N.J. 2007) (holding that an employee third-party beneficiary is subject to the forum selection clause)(citing Coastal Steel Corp v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983) cert. denied 464 U.S. 938 (1983)(holding that a third-party beneficiary is subject to the forum selection clause) and TAAG Linhas Aereas v. Transam. Air., Inc., 915 F.2d 1351, 1354 (9th Cir. 1990)(holding that third-party beneficiaries and other non-signatory defendants are subject to the forum selection clause)).

E. Proper Venue Analysis

As the Defendant seeking dismissal, Gold Star bears the burden of showing that the District of New Jersey is not the proper venue for this case.  Gold Star contends that this suit should have been brought in Minnesota and that the District of New Jersey is not the proper venue.  The Defendants all reside in the same district and it is not the District of New Jersey. 28 U.S.C. § 1391(b)(1).  Gold Star contends that New Jersey is not the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2).  Gold Star further contends that New Jersey is not the proper forum under 28 U.S.C. § 1391(b)(3) because

there is an appropriate forum in which this case could have been brought.

Gold Star does not contend that the forum selection clause in the employee defendants' agreements is invalid, but rather that it should not apply to Gold Star.  The Court finds that Gold Star's conduct is closely related to the contractual relationship between AnnieMac and the employee defendants. Therefore, it is appropriate to enforce the forum selection clause against Gold Star.  The interrelation between the parties and the contractual relations in this case render it difficult and inefficient to litigate AnnieMac's claims against Gold Star separately.

The Court finds that venue is proper in the District of New Jersey and will not dismiss AnnieMac's complaint on this basis.

F. Standard for Motion to Dismiss and Compel Arbitration

The Third Circuit has typically treated motions to compel arbitration "as a motion to dismiss for failure to state a claim upon which relief can be granted."  Palcko v. Airborne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 24-25 (1983); see Ehleiter v. Grapetree
Shores, Inc., 482 F.3d 207, 219 n. 10 (3d Cir. 2007) (holding
that a defendant had waived any right to arbitrate by actively
litigating the dispute for almost four years).

In Hoxworth v. Blinder, Robinson & Co., Inc., the Third
Circuit identified six factors to determine if waiver of
arbitration has occurred: (1) timeliness or lack thereof of the
motion to arbitrate; (2) extent to which the party seeking
arbitration has contested the merits of the opposing party's
claims; (3) whether the party seeking arbitration informed its
adversary of its intent to pursue arbitration prior to seeking
to enjoin the court proceedings; (4) the extent to which a party
seeking arbitration engaged in non-merits motion practice; (5)
the party's acquiescence to the court's pretrial orders; and (6)
the extent to which the parties have engaged in discovery.  980
F.2d 912, 926-27 (3d Cir. 1992).

These factors are "nonexclusive" and the Third Circuit has
further held that "not all factors need to be present to justify
a finding of waiver."  In re Pharmacy Ben. Managers Antitrust
Litig., 700 F.3d 109, 118 (3d Cir. 2012) (citing Nino v. Jewelry
Exch., Inc., 609 F.3d 191, 209 (3d Cir. 2010)).  Instead, waiver
is determined "based on the circumstances and context of the
particular case."  Id.  Ultimately, "prejudice is the touchstone
for determining whether the right to arbitrate has been waived."

18

Hoxworth, 980 F.2d at 925 (holding that defendants waived their right to arbitration by litigating the case for almost a year before filing a motion to compel arbitration).

G. Analysis of Lund's Motion to Dismiss

Defendant Lund made a motion to dismiss AnnieMac's claims and compel arbitration in July 2019. AnnieMac does not dispute that Lund's employment agreement contains an arbitration cause. AnnieMac also does not contest that its claims fall within this arbitration clause. AnnieMac instead argues that Lund has waived his right to arbitration.

1. Timeliness of Motion to Arbitrate

Lund made this motion to compel arbitration in July 2019, three weeks after AnnieMac filed its Second Amended Complaint and over five months after the beginning of this litigation. As AnnieMac points out, Lund did not offer an explanation for this delay. This factor weighs in favor of finding that Lund waived his right to arbitration.

2. Contesting the Merits

Lund filed an answer to AnnieMac's First Amended Complaint in March 2019. In this answer, Lund asserted nine affirmative defenses and four counterclaims against AnnieMac. He asserted that subject matter jurisdiction, personal jurisdiction, and venue were proper for his counterclaims. Of the nine affirmative defenses, none mention Lund's intention or desire to

19

resolve these issues through arbitration.  This factor weighs in favor of finding Lund waived his right to arbitration.

3. Notice of Intent to Pursue Arbitration

Lund asserts that on June 27, 2019, his attorneys contacted AnnieMac via email to request that all claims go to arbitration. This notice came several months after AnnieMac filed its complaint and three months after Lund filed an answer to Annie Mac's First Amended Complaint.  According to Lund, he did not receive a response to this email and filed this motion to compel arbitration less than a week later.  This factor weighs in favor of finding that Lund waived his right to arbitration.

4. Non-Merits Motion Practice

Lund contends that he has not initiated any non-merits motion practice.  AnnieMac asserts that Lund represented that he would challenge AnnieMac's motion for leave to amend at a conference before Magistrate Judge Schneider in May 2019. Though Lund was eventually dissuaded from doing so, AnnieMac argues that Lund coaxed AnnieMac into furthering this litigation, expending significant resources and time it would not have otherwise spent.  AnnieMac argues that this constitutes a significant detriment and prejudice to AnnieMac.  It is clear that Lund has several opportunities to advise the Court and his adversary far in advance of his June 27th notice that he intended

20

to pursue arbitration.  This factor weighs in favor of finding that Lund did not waive his right to arbitration.

5. Acquiescence to Court's Pre-trial Orders

When a party "fails to demand arbitration during pretrial proceedings, and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e. prejudiced." Hoxworth, 980 F.2d at 926.

Prior to this motion, the Court had issued an Order granting the motion to amend and pretrial orders related to pleading and briefing deadlines.  AnnieMac highlights that Lund advocated that this Court had jurisdiction in this case, illustrating that he intended to comply with the Court's orders. This factor weighs in favor of finding Lund waived his right to arbitration.

6. Discovery

Usually, the fact that parties did not engage in discovery precludes a finding of waiver.  See PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995).  However, this fact may be outweighed by a party's tactical decision to extensively litigate in federal court before seeking to compel arbitration.  See South Broward Hosp. Dist. v. Medquist, Inc., 258 Fed.Appx. 466, 468 (3d Cir. 2007) (holding that a party who

delayed making a motion to compel arbitration for eleven months
while it vigorously litigated its case had waived its right to
arbitration).

The parties agree that they have not exchanged Rule 26
Initial Disclosures, conducted depositions, or produced written
discovery requests.  This weighs in favor of finding that Lund
did not waive his right to arbitration, but the Court may also
consider Lund's decision to litigate in federal court prior to
filing his motion to compel arbitration.

Though some of these factors weigh in favor of Lund's
argument that he did not waive his right to arbitration, the
Court finds that based on the circumstances and context of this
particular case, these factors are sufficient to overcome the
presumption of arbitrability in Moses H. Cone Mem'l Hosp.
Lund's assertion of counterclaims and participation in the
magistrate judge's management of the case, while not extensive,
demonstrates "a tactical decision to litigate in federal court."
Compare South Broward Hosp. Dist v. Medquist, Inc., 258
Fed.Appx. 466 (3d Cir. 2007)(even though there was no discovery
finding a waiver because defendant had made a tactical decision
to litigate in federal court for 11 months before making a
motion to compel arbitration) with Wood v. Prudential Insurance,
207 F.3d. 674 (3d Cir. 2000)(finding defendant did not waive his
right to arbitration after a one and half month delay because

22

the defendant did not engage in significant litigation action causing prejudice).  On balance and considering Defendant Lund's litigation strategy as a whole, the Court finds that Lund has waived arbitration and will deny Lund's motion to compel arbitration.

## Conclusion

For the reasons detailed above, the Court will deny Gold Star's motion to dismiss for lack of personal jurisdiction and improper venue.  The Court will deny Lund's motion to compel arbitration.

An appropriate Order will be entered.


Date:  July 2, 2020 _                    s/ Noel L. Hillman_____
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.