```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                    :
AMERICAN NEIGHBOORDHOOD MORTGAGE    :
ACCEPTANCE COMPANY, LLC             :
d/b/a/ ANNIEMAC HOME MORTGAGE,      :
                                    :
          Plaintiff,                : 1:19-03666 (NLH)(MJS)
                   :
    v.                              :       OPINION
                                    :
                                    :
JOSHUA LUND; MATTHEW BENSON;        :
JAMES SHAEFER; MARK TRUDEAU; and    :
GOLD STAR MORTGAGE FINANCIAL        :
CORPORATION                         :
          Defendants.               :
_____ :
```

**APPEARANCES**:

Zachary Glaser, Esquire
John J. Allegretto, Esquire
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA 19103
    *Attorneys for Plaintiff*

Peter G. Goodman
Law Office of Peter G. Goodman, PLLC
30 Broad St
37th Floor
New York, NY 10004
    *Attorney for Defendant Joshua Lund*

Matthew Benson
13 4th Avenue N
#102
Minneapolis, MN 55401
    *Defendant Pro Se*

James Schaefer
5110 Trenton Lane N.
Plymouth, MN 55442
    *Defendant Pro Se*

1

Mark Trudeau
6434 City West Parkway
Eden Prairie, MN 55344
    *Defendant Pro Se*

Jonathan D. Ash, Esquire
Alison L. Hollows, Esquire
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
    *Attorneys for Defendant Gold Star Mortgage Financial Corporation*

**<u>HILLMAN</u>, District Judge**

This matter is before the Court on Defendant Gold Star Mortgage Financial Corporation's ("Defendant Gold Star") Motion for Reconsideration. (ECF No. 49.) For the reasons that follow, the Court will grant the motion.

**A. Standard for Motion for Reconsideration**

"Motions for reconsideration exist to 'correct manifest errors of law or fact or to present newly discovered evidence.'" <u>Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council</u>, 964 F.3d 218, 230 (3d Cir. 2020) (quoting <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985)). A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. <u>Johnson v.</u>

Diamond State Port Corp., 50 F. App'x 554, 560 (3d Cir. 2002) (quoting Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).  "[A] district court has considerable discretion to decide whether reconsideration is necessary to prevent manifest injustice." ADP, LLC V. Lynch, No. 16-01053, 2017 U.S. Dist. LEXIS 110337, at *5 (D.N.J. July 17, 2017).

### B. Analysis

In the Court's July 2, 2020 Opinion, the Court found that application of the Calder[1] test warranted this Court's exercise of specific personal jurisdiction over Defendant Gold Star. Defendant Gold Star now argues this Court overlooked pertinent facts and controlling case law resulting in manifest injustice. Defendant Gold Star first argues this Court overlooked the importance of distinguishing facts between the instant case and Strategic Products & Servs., LLC v. Integrated Media Techs., Inc., 2019 U.S. Dist. LEXIS 79319 (D.N.J. May 10, 2019), a decision of a judge in this District which this Court discussed in denying Defendant Gold Star's Motion to Dismiss for lack of personal jurisdiction.  Defendant Gold Star further argues this Court overlooked binding Third Circuit case law which states that mere knowledge of the location of the Plaintiff is insufficient to establish personal jurisdiction under Calder.

---

[1] Calder v. Jones, 465 U.S. 783 (1984).

Defendant Gold Star further explains this Court's previous decision should be reconsidered in order to "correct the manifest injustice [of] forcing Gold Star to litigate in a court that does not have personal jurisdiction over it."

In response, Plaintiff argues this Court did not overlook the distinctions between this matter and Strategic Products and that Plaintiff's position for why this Court has personal jurisdiction over the Defendant does not relate to whether the individual defendants were employed physically within the state of New Jersey. Instead Plaintiff's position is that it "was foreseeable that Gold Star would be required to litigate in New Jersey because it knew that Defendant Lund had a contract with Plaintiff that included a choice of law and venue provision mandating that this suit be brought in this Court (much like several employees in the Strategic Prods. & Servs., LLC) and that by unlawfully aiding and conspiring with Lund, it accepted the risk of becoming entangled in a suit in New Jersey."

Plaintiff further explains that the "key factor that exists in both this matter and in Strategic Prods. & Servs., LLC is that the defendant employer knew when it started its scheme to take a competitor's business that aiding plaintiff's former employee in a manner contrary to a contract had the potential to land the former employee and defendant employer in court in New Jersey." Plaintiff makes an additional argument that, while not

4

cited by this Court in its Opinion, the Court may have found an unpublished District of New Jersey case law persuasive when drafting its Opinion.

The Local Rule 7.1(i) standard applies to Defendant Gold Star's Motion for Reconsideration.  Under Local Rule 7.1(i), the moving party must demonstrate "'the need to correct a clear error of law or fact or to prevent manifest injustice.'" Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (citations omitted).  In doing so, the moving party must show the "'dispositive factual matter or controlling decisions of law'" it believes the court overlooked in its initial decision.  Mitchell v. Twp. of Willingboro Municipality Gov't, 913 F. Supp. 2d 62, 77-78 (D.N.J. Mar. 22, 2013).

Personal jurisdiction is a threshold issue.  See Exporting Commodities Int'l, LLC v. S. Minerals Processing, LLC, No. 16-09080, 2017 U.S. Dist. LEXIS 190494, at *8 (D.N.J. Nov. 17, 2017) (explaining that the issue of whether the court may exercise personal jurisdiction 'is dispositive to the viability of the entire suit').  "Personal jurisdiction 'represents a restriction on judicial power . . . as a matter of individual liberty.'"  Brown v. AST Sports Sci., Inc., No. 02-cv-1682, 2002 U.S. Dist. LEXIS 12294, at *14 (E.D. Pa. June 28, 2002)(quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982)).  Here, Defendant Gold Star should

5

not have to litigate in a court that does not have personal jurisdiction over it because such action would be a violation of its due process rights.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

In this Court's previous Opinion, it found that the court had specific jurisdiction over Defendant Gold Star.  Am. Neighborhood Mortg. Acceptance Co. LLC v. Lund, No. 19-3666, 2020 LEXIS 116401 (D.N.J. July 2, 2020).  In doing so this Court analogized this case to Strategic Products.  Id. at *11-13.  This Court noted that in Strategic Products "one software technology company brought a complaint against a competitor software technology company after several of its employees left for the competitor company in violation of their employment contracts."  Id. at *12.  This Court further explained that in Strategic Products, the court held it "had personal jurisdiction over the defendant software company because they had 'expressly aimed its conduct at New Jersey, such that New Jersey can be said to be the focal point of [defendant]'s alleged tortious activity.'"  Id.  Following this explanation of the Strategic Products case, this Court explained there are several distinctions between the facts of this case and Strategic Products and then in a footnote went onto explain some of the following differences:

> In Strategic Prods., this Court noted that

6

> "the employees who . . . migrated to [defendant] were assets fully tied to New Jersey by the indices of their employment," before ultimately concluding that "[b]y targeting them, [defendant] targeted New Jersey assets." This Court further noted that "simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient" to demonstrate that the defendant expressly aimed its conduct at the forum. Id. at *16 (citing IMO Indus., 155 F.3d at 265). In this case, the employee defendants were located in Minnesota, not New Jersey. AnnieMac explains that the employee defendants signed agreements identifying AnnieMac as a New Jersey company. Furthermore, AnnieMac required these employees to travel to New Jersey for training and other company events.

Id. at *12 n.1. The Court then concluded, despite these differences and taking Plaintiff's allegations as true, this Court had specific jurisdiction over Defendant Gold Star because this Court found Plaintiff satisfied the Calder v. Jones test. Id. at *12. This Court then detailed the factual allegations that demonstrated the Calder v. Jones test was satisfied. Specifically, this Court noted:

> Gold Star knew or expected that the employee defendants would target AnnieMac customers and potential customers once they began working at Gold Star. AnnieMac further alleges that Gold Star knew or expected that the employee defendants would bring with them and disclose confidential materials from AnnieMac when they changed positions. AnnieMac alleges that Benson, Trudeau, and Schaefer entered into an agreement to divert AnnieMac customers to Gold Star prior to their resignation from AnnieMac. Gold Star was allegedly aware of and supported

7

> this pact between the employee defendants. These facts when taken together enhance Gold Star's otherwise insufficient contacts with the New Jersey such that the 'minimum contacts'" prong of the Due Process test is satisfied.

Id. at *12-13.

Defendant Gold Star argues this Court overlooked binding Third Circuit case law and "overlooked the importance of a key distinguishing fact between *Strategic Products* and the instant case[:]" the employees in Strategic Products worked for the New Jersey office whereas the individual employees in this case worked in Plaintiff's Minnesota office.  This Court previously noted this distinction and cited to the Third Circuit precedent in IMO Indus. but failed to analyze the effect, if any, this difference has on the question at issue in this case.  Despite this distinction, this Court further noted that the Court in Strategic Products found it was appropriate to exercise personal jurisdiction over the competitor company because it had "expressly aimed its conduct at New Jersey, such that New Jersey can be said to be the focal point of [defendant]'s alleged tortious activity."  This Court explained how the employment agreements of the employee defendants identified AnnieMac as a New Jersey company and that AnnieMac required the same defendant employees to travel to New Jersey for training and company events.  Id. at *12 n.1.  As Defendant explains, neither of

these allegations demonstrate a connection between Gold Star and New Jersey.

Moreover, Defendant directs this Court to binding Third Circuit case law. In its original motion to dismiss, Defendant explained a conclusion that this Court may exercise personal jurisdiction over Defendant Gold Star would be contrary to Third Circuit precedent. Specifically, Defendant Gold Star explained "where a defendant's '*only connection* to the forum is the plaintiff's location in the forum,' the 'Third Circuit has held that specific jurisdiction cannot be exercised over defendants against whom intentional tort claims have been asserted." (ECF No. 40 at 16.)

This Court agrees that its July 2, 2020 applied the Calder v. Jones test more broadly than binding Third Circuit precedent would appear to allow. The Third Circuit has previously held "[w]hile knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, . . . it alone is insufficient to satisfy the targeting prong of the effects test." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 266 (3d Cir. 1998). Instead, a plaintiff must show that "defendant expressly aimed its tortious conduct at the forum." Id. (quoting Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007)). Absent purposeful direction of conduct by the defendant towards the forum, there is no basis for personal jurisdiction. See IMO

9

Indus., 155 F.3d at 265-66.

In IMO Indus., the Third Circuit reviewed and agreed with the Fourth Circuit's decision in ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617(4th Cir. 1997) with regard to claims of conspiracy to appropriate the plaintiff's trade secrets and customer lists. In ESAB Group, none of the co-conspirators were residents of the forum state. IMO Indus., 155 F.3d at 263-66 (citing ESAB Group, 126 F.3d at 625). Further, the only "contact" was the alleged knowledge the defendant had that acquisition of trade secrets "could result in lowered sales for the plaintiff." Id. (citing ESAB Group, 126 F.3d at 625). "[K]nowledge alone," however, "did not 'manifest behavior intentionally targeted at and focused on South Carolina' under *Calder*." Id. (quoting ESAB Group, 126 F.3d at 625).

The court explained that if the factual scenario described above allowed the exercise of personal jurisdiction, "jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state, since the plaintiff always 'feels' the impact of the tort there." Id. (citing ESAB Group, 126 F.3d at 625-26). The Third Circuit agreed with the analysis in ESAB Group that "the *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point

10

of the tortious activity.  Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."  Id. at 265 (emphasis in original).  Calder did not create "a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state."  Id. at 265.

In response to Defendant's motion, Plaintiff argues that Plaintiff's position regarding why this Court correctly found personal jurisdiction was established is that it "was foreseeable that Gold Star would be required to litigate in New Jersey because it knew that Defendant Lund had a contract with Plaintiff that included a choice of law and venue provision mandating that this suit be brought in this Court (much like several employees in the Strategic Prods. & Servs., LLC) and that by unlawfully aiding and conspiring with Lund, it accepted the risk of becoming entangled in a suit in New Jersey."

This Court acknowledges the presence of forum selection clauses in both Strategic Products and this case.  However, this Court agrees with Defendant Gold Star that more facts connecting it to New Jersey must be present for the Court to exercise personal jurisdiction such as those outlined in Strategic Products.  In support of its conclusion, the Strategic Products court considered the following facts: (1) the employees reported

11

to its New Jersey headquarters and received payroll checks and benefits from SPS's New Jersey headquarters and were subject to confidentiality obligations that survived the termination of employment; and (2) the employees who made up the main unit of SPS that ultimately went to the competing company "were assets fully tied to New Jersey by the indices of their employment" and thus "[b]y targeting them, IMT targeted New Jersey assets." Strategic Products, 2019 U.S. Dist. LEXIS 79319, at *20-21. The Court concluded that the loss of SPS's profit center and "by reciting the ties to New Jersey inherent in employment within that profit center, SPS has effectively pleaded specific jurisdiction." Id. In addition to the foregoing facts, the Court explained that other employees recruited by the defendant were subject to non-solicitation agreements, two employees had agreements containing New Jersey choice of law and forum selection clauses, and two employees lived in New Jersey. Id. at *21-22.

These extensive facts connecting the defendant in Strategic Products to New Jersey are simply not present in this matter. While the New Jersey choice of law and forum selection clauses found in the employment contracts with its former employees and Defendant Gold Star's knowledge of Plaintiff's principal place of business are helpful to Plaintiff, they do not standing alone tip the balance away from Defendant to Plaintiff while remaining

12

faithful to IMO Indus.  Venue is one thing, personal jurisdiction, a concept of constitutional dimension, is another. Absent persuasive or binding authority to the contrary, the fact that the former employees of AnnieMac agreed contractually to litigate their dispute in New Jersey does not cause an alleged joint tortfeasor, who is not a signatory to the agreement, to waive its due process and personal jurisdiction defenses even under Calder.  To the extent the Court's July 2, 2020 Opinion could be construed to so hold it was in error.

    Plaintiff's position is not without support in the case law.  At least some courts within the Third Circuit have held a non-signatory to a contract that includes a forum-selection clause may be bound to the forum-selection clause for personal jurisdiction purposes where the non-signatory is closely related to the contractual relationship.  See, e.g., Matthews Int'l Corp. v. Lombardi, No. 20-00089, 2020 U.S. Dist. LEXIS 45728, *10 (W.D. Pa. Mar. 17, 2020).  In reaching this conclusion, the Court relied on the Third Circuit's holding In re McGraw-Hill where the Third Circuit held "traditional principles of contract law, non-signatories may be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related parties." (Id. (quoting In re McGraw-Hill Global Educ. Holdings LLC, 909 F.3d 48, 59 (3d Cir. 2018)).

Nevertheless, In re McGraw-Hill was a venue case.  In Guaranteed Rate, the plaintiff relied on similar case law from the Seventh Circuit in support of its argument that the court could assert personal jurisdiction over competitors where its former employees now worked based on a forum selection clause in the former employees' compensation agreements. Guaranteed Rate, Inc. v. Conn, 264 F. Supp. 3d 909, 925 (N.D. Ill. 2017).  More specifically, the plaintiff argued Adams v. Raintree Vacation Exchange, LLC, 702 F.3d 436 (7th Cir. 2012) stood for the proposition that "a nonparty can enforce a contractual forum selection clause whenever the nonparty is 'closely related' to one of the contracting parties and/or lawsuit." Id.

However, the court recognized that "because Adams is a venue case, the issue here of the issue here of whether a defendant may be found to have waived objection to personal jurisdiction based on a forum selection clause in a contract to which it is not a party is beyond the scope of what was contemplated by the Seventh Circuit in that case." Id.  The court then focused on several district court cases plaintiff cited where the court applied the same foreseeability test to determine whether a defendant was subject to personal jurisdiction. Id.  Nevertheless, the court found these cases unpersuasive and flawed because "they fail[ed] to recognize the due process implications of their holdings." Id.  The Court

14

then, relying on Burger King, held it has "serious concerns over whether it would be '[]reasonable and []just' . . . to apply a 'closely relationship' test that relies on 'foreseeability' to find implied consent to personal jurisdiction." Id. at 926 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985)).

In reaching this conclusion, the court, relying on Walden, explained how "due process considerations are not tied to 'foreseeability alone.'" Id. (quoting Walden v. Fiore, 134 S. Ct. 1115, 1124 (2014)("rejecting the lower court's conclusion that the defendant's knowledge of the plaintiff's 'strong forum connections,' combined with the 'conclusion that [the plaintiff] suffered foreseeable harm in [the forum],' was sufficient to establish minimum contacts")). The court then reasoned "[i]f foreseeability cannot establish minimum contacts, it should not be a sufficient basis for finding a waiver or implied consent either." Id. In Guaranteed Rate, the court recognized that in Walden the Supreme Court "firmly established that, regardless of how foreseeable it may be that the defendant might be sued in a particular forum, due process is not satisfied where the plaintiff is the only link between the defendant and that forum. Instead, due process usually requires some conduct by the defendant in the forum." Id. at 919 (citing Walden, 134 S. Ct. at 1122-25). The court explained that this holding "calls into

15

question the First Circuit's expansive application of Calder in Astro-Med" where the First Circuit "approved the assertion of personal jurisdiction over a competitor because the competitor hired the plaintiff's former employee knowing (1) that the plaintiff was located in the forum state, (2) that the former employee had entered into an employment agreement in the forum state, (3) that the contract specified it would be governed by the law of the forum state, (4) that the contract contained non-competition and non-disclosure provisions, and (5) that by virtue of the contract, the former employee had consented to the exclusive jurisdiction of the courts of the forum state over any disputes related to the contract." Id. (citing Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1 (1st Cir. 2009)). This is because "after Walden there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative." Id. (quoting Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc., 751 F.3d 796, 802 (7th Cir. 2014)).

In Guaranteed Rate, the court also reasoned "it does not make sense to tie the concept of implied consent to foreseeability" because "[t]o give consent to personal jurisdiction objections to a court's assertion of personal jurisdiction" and "a waiver is defined as 'a conscious

16

relinquishment of a known right.'" Id. at 926 (quoting Anderson v. Catholic Bishop of Chi., 759 F.3d 645, 651 (7th Cir. 2014)). The court concluded that "[w]hile it may be *foreseeable* to a nonsignatory who knowingly allows itself to become embroiled in a dispute related to a contract with a forum selection clause that it is at risk of being sued in the contractually selected forum, the foreseeability of that risk does not mean the nonsignatory *intended* to *relinquish* its constitutional right to be free from suit except in a forum with which it has minimum contacts." Id.

At least one court within the Third Circuit addressed its "serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause." Truinject Corp. v. Nestle Skin Health S.A., No. 19-592, 2019 U.S. Dist. LEXIS 215313, *29 (D. Del. Dec. 13, 2019). The court explained that the "the exercise of jurisdiction over a party bound by a forum selection clause is based on consent" and "[i]f the party has consented to a particular forum in a 'freely negotiated' agreement the party is deemed to have waived their right to challenge personal jurisdiction and no further due process 'minimum contacts' analysis is required." Id. The court then recognized that the "rationale underlying that rule is absent in cases in which the defendant is not even a party to

17

agreement" and under those circumstances "a court should not exercise jurisdiction unless the record otherwise demonstrates 'minimum contacts' between the defendant and the forum." Id. (citing Guaranteed Rate, 264 F. Supp. 3d at 926).

Considering the foregoing and in light of the holdings in Walden and IMO, the Court concludes the Third Circuit would adopt the reasoning in Guaranteed Rate, which provides a detailed analysis of Walden and IMO as well as recognizes the due process implications of asserting personal jurisdiction over a non-signatory to a contract because the "closely related" test is satisfied, over the reasoning of Matthews, which fails to acknowledge, let alone discuss, the impact of Walden on the Calder test, fails to provide a detailed analysis of IMO, and fails to recognize the due process implications of it decision to assert personal jurisdiction because the "closely related" test was satisfied by relying on In re McGraw-Hill, a venue case.

In sum, this Court agrees that if the simple allegation that a defendant knew a plaintiff could be injured in their state of jurisdiction were sufficient to confer personal jurisdiction then "every intentional tort action could be filed in the plaintiff's home forum without need for an analysis of the appropriateness of personal jurisdiction over the defendant." (ECF No. 49-1 at 9.)  This Court finds its previous

18

decision overlooked controlling Third Circuit case law and its findings were inconsistent with such case law.  This Court agrees that Defendant Gold Star has shown more than mere disagreement with this Court's earlier ruling.  Thus, because Plaintiff did not meet its burden[2] of establishing personal jurisdiction over Defendant Gold Star, Defendant Gold Star should no longer be a party to this action.

Accordingly, Defendant Gold Star's motion for reconsideration must be granted, and the Court's July 2, 2020 Opinion and Order must be vacated to the extent they denied Defendant Gold Star's Motion to Dismiss for lack of personal jurisdiction.

An appropriate Order will be entered.

```
Date: April 5, 2021             s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.
```

---

[2] If personal jurisdiction in contested, the plaintiff bears the burden to produce actual evidence, through sworn affidavits or other competent evidence, and not through bare pleadings alone, of the defendant's contacts with the forum.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 and n.9 (3d Cir. 1984).